# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**B. J. R.,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0548** (BOR Appeal No. 2018024598)
(Claim No. 2054921)

**HUNTINGTON ALLOYS CORPORATION,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner B. J. R., by Counsel Edwin H. Pancake, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review").[1] Huntington Alloys Corporation, by Counsel Steven K. Wellman, filed a timely response.

The issues on appeal are an additional compensable condition and medical benefits. The claims administrator denied a request for authorization of a neurosurgical consultation on October 3, 2018. In two separate decisions dated December 17, 2018, the claims administrator denied the addition of right side sacroiliac joint dysfunction to the claim and denied authorization of a right sacroiliac joint injection. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its November 21, 2019, Order. The Order was affirmed by the Board of Review on June 25, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

B. J. R., a lead pitman and operator, injured his right shoulder and right leg while lifting a gum barrel on May 10, 2018. He sought treatment that day from St. Mary's Medical Center for right shoulder and right ankle pain. He denied neck or back pain. A right ankle x-ray showed a distal fibular fracture. A right shoulder x-ray showed no acute injuries but did show degenerative acromioclavicular joint changes. B. J. R. was diagnosed with a right distal fibula fracture. The following day, B. J. R. was treated by Stanley Tao, M.D., who diagnosed a closed, nondisplaced fracture of the right fibula. The Employees' and Physicians' Report of Injury was completed on May 14, 2018, and indicates B. J. R. injured his leg, ankle, shoulder, hip, buttock, and back on May 10, 2018. The diagnoses were listed as back thorax wall contusion, lumbar sprain, right front thorax wall contusion, and right fibula fracture.

B. J. R. previously suffered a low back injury. On August 12, 2015, he reported to Diana Stotts, C-FNP, that he had lumbar pain that radiated into his buttocks, as well as numbness. She diagnosed back pain. B. J. R. underwent a lumbar MRI on August 18, 2015, which revealed a moderate L4-5 left disc protrusion resulting in left-sided canal and foraminal narrowing as well as an asymmetric disc bulge at L5-S1 causing left foraminal narrowing. On August 24, 2015, B. J. R. returned and reported numbness in both legs, as well as feet and back pain. It was noted that he was waiting for a neurosurgical consultation. A September 16, 2015, Physical Therapy Initial Evaluation report indicates B. J. R. was seen for lumbosacral spondylosis, thoracic or lumbosacral neuritis or radiculitis, and back pain. He reported that he injured his back several years prior. B. J. R. stated that he had constant low back pain, groin pain, back of leg pain, and feet numbness. Examination showed absent patellar reflexes. The assessment was low back pain with radicular

pain in both lower extremities, impaired gait, diminished strength, and impaired functional mobility.

B. J. R. sought treatment for his compensable right ankle injury from Allen Young, M.D., on May 14, 2018. Dr. Young found that B. J. R. also injured his upper back, lower back, and right scapular area as a result of the work injury. Dr. Young diagnosed upper back contusion, lumbar sprain, rib contusion, and closed right distal fibula fracture. A lumbar x-ray showed multilevel degenerative changes. A thoracic x-ray showed mild degenerative changes. On July 24, 2018, B. J. R. continued to have low back pain. He also reported numbness in his right leg and foot. On August 9, 2018, Dr. Young compared B. J. R.'s current and prior lumbar MRIs and found no significant difference. On August 30, 2018, Dr. Young noted that B. J. R. had no right-sided lower back symptoms prior to the compensable injury. On September 26, 2018, B. J. R. reported scrotal numbness and erectile dysfunction that began a month after the compensable injury. On examination, Dr. Young found right S1 radiculopathy with radicular symptoms and paresthesia. He recommended a neurosurgical consultation.

Treatment notes from Generations Physical Therapy indicate B. J. R. was treated for lumbar sprain, back pain with right sciatica, abnormal gait, and abnormal mobility. B. J. R. reported that he had no pain but did suffer from numbness down his leg. On June 20, 2018, B. J. R. reported numbness in his back, buttock, and thigh. On June 22, 2018, B. J. R. had numbness and sharp pain radiating into his right hip and right leg.

A lumbar MRI was performed on July 17, 2018, which showed a moderate to large left paracentral disc protrusion with diffuse disc bulging and narrowing of the left lateral aspect of the canal and lateral recess as well as small central disc protrusions at T10-11 and T11-12. There was also moderate left and right neural foraminal stenosis, diffuse disc bulging, moderate left neural foraminal stenosis, degenerative disc changes, and disc protrusions at L4-5 and L5-S1, all of which were unchanged from a prior study.

A July 30, 2018, treatment note from Davis Chiropractic indicates B. J. R. was treated for left lumbar, right lumbar, right sacroiliac, left sacroiliac, sacral, left pelvic, and right pelvic discomfort. Palpation showed indications of subluxation in the lumbosacral, sacroiliac, and pelvic region. On August 2, 2018, B. J. R. returned to Generations Physical Therapy, and right ankle joint pain was added to the diagnoses. On August 10, 2018, B. J. R. reported that right ankle pain was his biggest problem. A lower extremity EMG was performed on September 12, 2018, and it showed right S1 radiculopathy but no evidence of peripheral neuropathy or myelopathy.

In a September 18, 2018, Independent Medical Evaluation, Marsha Lee Bailey, M.D., diagnosed healed right ankle fracture and chronic lumbar pain. Dr. Bailey found a significant amount of symptom magnification and opined that B. J. R.'s subjective complaints greatly outweighed the objective findings. Further, B. J. R. suffered from lumbar pain for approximately three years prior to the compensable injury. Dr. Bailey found that the most significant clinical findings were at L4-5 and L5-S1, and that they preexisted the compensable injury. Dr. Bailey opined that though B. J. R.'s right leg complaints are similar to radiculopathy at L5 or S1, the symptoms cannot be explained by the left-sided L4-5 or L5-S1 disc changes. Dr. Bailey also found

no explanation for B. J. R.'s reports of bilateral buttock, perineum, and scrotal numbness. Dr. Bailey opined that B. J. R. had reached maximum medical improvement, and she assessed 0% whole person impairment.

The claims administrator denied authorization of a neurosurgical consultation on October 3, 2018. In a November 7, 2018, letter to Dr. Young, Dwight Saulle, M.D., stated that he had examined B. J. R. and diagnosed back pain and right sacroilitis. Dr. Saulle stated that B. J. R.'s symptoms are indicative of sacroiliac joint pain, and the mechanism of injury could have caused sacroiliac joint dysfunction. Dr. Saulle referred B. J. R. for sacroiliac joint injections. If repeat injections did not help, he recommended B. J. R. consider sacroiliac joint fusion. The claims administrator denied the addition of right side sacroiliac joint dysfunction to the claim on December 17, 2018. In a separate decision that day, the claims administrator also denied authorization of a right sacroiliac joint injection.

B. J. R. testified in a January 16, 2019, deposition that he had some back problems in 2015 and was diagnosed with disc bulges at L4-5 and S1-S2. He underwent physical therapy and had no symptoms until the compensable injury occurred. B. J. R. stated that he missed no work for lower back issues between 2015 and his compensable 2018 injury.

David Jenkinson, M.D., performed an Independent Medical Evaluation on April 9, 2019, in which he found no objective evidence of any low back or pelvic structural abnormalities. On examination, Dr. Jenkinson found no evidence of tenderness directly over the sacroiliac joint and no pain with stress on the joint. He opined that there was no objective evidence of right sacroiliac joint dysfunction due to the compensable injury. Dr. Jenkinson also opined that there was no clinical evidence of lumbar radiculopathy and no need for a neurosurgical consultation. B. J. R. had reached maximum medical improvement and required no further treatment.

In its November 12, 2019, Order, the Office of Judges affirmed the claims administrator's decisions denying a request for authorization of a neurosurgical consultation, denying the addition of right side sacroiliac joint dysfunction to the claim, and denying authorization of a right sacroiliac joint injection. The Office of Judges first addressed the addition of right sacroiliac joint dysfunction to the claim. It found that a preponderance of the evidence indicates B. J. R. suffers from sacroiliac joint dysfunction. Dr. Saulle diagnosed right sacroilitis. Dr. Bailey found right sacroiliac joint pain on examination. Further, treatment notes from Davis Chiropractic indicate spasms, hypomobility, and tenderness indicative of subluxation in the lumbosacral, sacroiliac, and pelvic region. B. J. R. reported to several physicians that he suffers from right leg, hip, buttock, and groin pain and numbness. The Office of Judges concluded that the evidence supports Dr. Saulle's diagnosis of sacroiliac joint dysfunction. However, the Office of Judges also concluded that the condition preexisted the compensable injury. It found that prior to the compensable injury, B. J. R. reported all of the symptoms indicative of sacroiliac joint dysfunction. On August 12, 2015, he reported that he suffered from pain and numbness in his lower back that radiated into his buttocks. On August 24, 2015, B. J. R. stated that he had right-sided back pain with numbness in both legs. Finally, on September 16, 2015, B. J. R. reported pain and numbness in his lower back that radiated into his groin, the backs of his legs, and his feet. Because sacroiliac joint dysfunction

4

preexisted the compensable injury, the Office of Judges concluded that it could not be added to the claim as a compensable condition.

Regarding the request for a sacroiliac joint injection, the Office of Judges found that such treatment was not necessary for a compensable injury. Dr. Young's request for an injection was not submitted as evidence, and there is no other evidence of record indicating such injection is necessary treatment for anything other than sacroiliac joint dysfunction. Because the condition was not added to the claim, treatment for it cannot be authorized. The Office of Judges also found that the request for a neurosurgical consultation could not be authorized. Dr. Young requested the consultation based on B. J. R.'s S1 radiculopathy and the L5-S1 central disc injury. The claim has not been held compensable for radiculopathy or any L5-S1 pathology. The Office of Judges found that the consultation would be aimed at treating B. J. R.'s preexisting, noncompensable conditions. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 25, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). A preponderance of the evidence indicates that while B. J. R. may suffer from sacroiliac joint dysfunction, the condition predated the compensable injury by at least three years. B. J. R. reported essentially the same symptoms that he now alleges as early as 2015. Pursuant to West Virginia Code § 23-4-1(a) workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Because sacroiliac joint dysfunction is not a compensable condition in the claim, treatment for the condition in the form of a sacroiliac joint injection and a neurosurgical consultation was properly denied.

Affirmed.

**ISSUED: January 11, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**DISQUALIFIED:**
Justice Evan H. Jenkins

5